963 A.2d 875 (2009)
405 N.J. Super. 149
STATE of New Jersey, Plaintiff-Respondent,
v.
William NORMAN, Defendant-Appellant.
Docket No. A-5662-06T4.
Superior Court of New Jersey, Appellate Division.
Submitted October 7, 2008.
Decided February 4, 2009.
*876 Yvonne Smith Segars, Public Defender, attorney for appellant (Michael Confusione, Designated Counsel, of counsel and on the brief).
Theodore F.L. Housel, Atlantic County Prosecutor, attorney for respondent (Jack R. Martin, Assistant Prosecutor, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
Before Judges WINKELSTEIN, FUENTES and CHAMBERS.
The opinion of the court was delivered by
FUENTES, J.A.D.
Defendant William Norman appeals from the order of the Law Division, Criminal *877 Part, denying his petition for postconviction relief (PCR). After reviewing the record before us, we reverse and remand.
These are the relevant facts. On April 20, 1998, defendant pled guilty pursuant to a negotiated agreement to first-degree robbery, N.J.S.A. 2C:15-1.[1] In the plea form he completed and signed, defendant acknowledged that the State would be seeking to have him sentenced subject to the provisions of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[2] Toward that end, defendant stipulated at the plea hearing that he inflicted "serious bodily injury" on the victim of the robbery, as that term is defined in N.J.S.A. 2C:11-1(b). The State in turn agreed to recommend that defendant be sentenced to a term of fourteen years, with an eighty-five percent period of parole ineligibility pursuant to NERA.
As was the practice at that time, defendant did not complete a separate, supplemental plea form describing, with specificity, all of the penal consequences of being sentenced subject to NERA, including that the court was required to impose a five-year period of parole supervision, commencing immediately upon his release from incarceration. N.J.S.A. 2C:43-7.2(c). The judge at the plea hearing did not inform defendant of this mandatory period of parole supervision.
The record of the plea hearing shows that defendant was given the opportunity to discuss the nature of the charges against him with his counsel before deciding to accept the State's offer. At the plea hearing, the prosecutor placed the details of the plea agreement on the record in open court, with defendant and his attorney present. As part of this description, the prosecutor made the following statement:
Judge, the State will seek to have this defendant sentenced under the No Early Release Act, which requires him to serve 85 percent of the sentence imposed on Indictment XX-XX-XXXX [the indictment reflecting the first-degree robbery charge]. The defendant will stipulate, Judge, to the fact that serious bodily injury was caused to the victim and the State will rely, Judge, on the defendant's factual basis as well as this stipulation under the No Early Release Act.
Thereafter, defense counsel addressed the court indicating her concurrence with the prosecutor's recitation, and confirming that she and her client had been provided with the victim's medical records which, in defense counsel's judgment, "certainly document the serious bodily injury." The medical records referred to by defense counsel contained the following description of the injuries sustained by the victim:
Patient is a 25 year old white male who was assaulted yesterday [September 30, 1997] by an assailant who struck him to the left side of the face twice knocking him to the ground. Patient was not sure whether the assailant was using brass knuckles or not. He said that he really did not lose consciousness, if he did it was only for a second. Patient *878 was able to pick himself up off the ground and was able to go back to the hotel and called his father upstairs in the room. He was then brought to the Emergency Room and seen. Since there was no loss of consciousness, no neck pain his lacerations were sewn and he was discharged into his father's care. Patient subsequently has developed severe headaches that he states appear right behind his eyes and he has had multiple episodes of vomiting. Patient, after returning to the Emergency Room, had a CT scan of the head performed which showed a small right subdural hematoma and a left parietal temporal contusion.
The discovery provided by the State also included records of other medical examinations performed on October 14, 1997, two weeks after the September 30, 1997 attack. These records show that the victim's complaints of headaches had largely subsided. The examining physician described the injuries as "cerebral contusion of a contrecoup type with evidence of contusion of both temporal tips. Also a small right subdural hematoma." The doctor's final recommendations included that the victim be "rescan[ned] ... in two weeks," because he expected that the "contusions and the subdural hematoma will resolve spontaneously."
At the plea hearing, the judge questioned defendant directly to confirm the latter's understanding of the terms of the plea agreement. When asked to provide a factual basis for the offense of first-degree robbery, defendant simply stated that he hit the victim twice with his hand and took some money from him. With respect to the injuries sustained by the victim, the judge asked defendant the following question: "[B]ased on your review of the discovery, is it a fact that that individual did sustain serious bodily injuries?" Defendant responded: "Yes, according to the medical records."
Although not entirely clear from the appellate record, it seems that shortly after he pled guilty, defendant informed the local Public Defender's Office that he wanted to retract his guilty plea based, in part, on his attorney's failure to challenge the State's claim that the victim suffered serious bodily injury and on her failure to apprise of him of the NERA mandatory five-year parole supervision.
In response to defendant's allegations, the Public Defender's Office determined that the staff attorney handling the case was in a position of conflict, and assigned new counsel to represent defendant at the sentencing hearing. Defendant alleges that despite having communicated this problem to the Public Defender's Office shortly after the plea hearing, he did not meet or communicate with substitute counsel during the four months between the plea hearing and the date of sentence. According to defendant, the first time he had any contact with substitute counsel was thirty minutes before the commencement of the sentencing hearing.
On the sentencing hearing held on August 14, 1998, substitute counsel indicated to the court that defendant wanted to retract his guilty plea, and requested that the sentencing hearing be adjourned for the purpose of having defendant examined by a psychiatrist. If the court was inclined to proceed with the sentence, counsel advised the court that he would address the deficiency in defendant's stipulation as to the applicability of NERA in a formal motion to vacate the plea. The prosecutor objected to any postponement of the sentencing hearing.
Addressing defense counsel's oral application, the sentencing judge made the following ruling:

*879 THE COURT: [A]s to a postponement, I don't think that that is appropriate. The defendant entered a plea of guilty to the charges against him on April the 20th, 1998and I'm certainly not faulting present defense counselbut we still have not had a formal motion filed. There's nothing pending by way of application.
I will say this: since I don't fault present defense counsel in any way and since he is in the case and since apparently he has even taken a step toward securing what he wants to produce, I would say that if and when we do hear a motion to retract the plea, the standards are somewhat different, I believe, for a motion made prior to sentencing after the sentencing, so I'm willing to say that we will apply the standards that would be applicable to a motion made prior to sentencing, but I believe we should proceed with sentencing at this time. (Emphasis added).
The Court then invited the prosecutor to present his case in support of the State's application to sentence defendant subject to the provisions of NERA. The prosecutor played the recording of the sentencing hearing in which defendant stipulated that the victim sustained serious bodily injury. The State also moved into evidence the plea form signed by defendant reflecting a similar stipulation.
In response, defense counsel moved to submit into evidence the victim's medical records provided by the State in discovery. The State objected on two grounds. First, the prosecutor argued that the medical records were inadmissible hearsay evidence; second, the records in defense counsel's possession did not include all of the "extensive treatment" received by the victim.
Defense counsel advised the court that the medical records in his possession were all of the discovery material concerning the victim's injuries provided to him by the Public Defender's Office. Based on his review of these records, counsel argued there was no evidence that the victim sustained serious bodily injury within the meaning of the statute. Addressing the arguments presented, the court made the following ruling:
THE COURT: Well, ... evidently you have some partial records there. But since it's been stipulated that there was serious bodily injury and since the stipulation is certainly to be given full force and effect unless it was not made knowingly and voluntarily, obviously the stipulation is binding. And the defendant also under oath conceded that he caused serious bodily injury.
So I find based upon what has been presented at this hearing that the defendant did commit a violent crime in that during the perpetration of a robbery, he caused serious bodily injury to the victim and, therefore, the case falls within the purview of the No Early Release Act.
We'll proceed.[3]
The court thereafter sentenced defendant consistent with the plea agreement to a term of fourteen years, with an eightyfive percent period of parole ineligibility pursuant to NERA. The Judgment of Conviction also reflects that the court imposed a five-year period of parole supervision *880 as mandated under N.J.S.A. 2C:43-7.2(c).
Despite defense counsel's statement at the sentencing hearing that he would file a formal motion to vacate defendant's guilty plea, and despite the trial court's willingness to treat such a post-sentence motion under the more lenient standards applicable to a motion filed prior to sentencing,[4] no such motion was ever filed. Instead, the record shows that defendant filed a direct appeal of his sentence under the summary process available under Rule 2:9-11, known as the Sentence Oral Argument Calendar.
At the appellate hearing, a third defense counsel argued that the attorney who appeared for defendant at the sentencing hearing was not given a fair opportunity to challenge whether the evidence actually established that the victim suffered serious bodily injury. The following excerpt from appellate counsel's argument encapsulates his position on appeal:
I'm saying that clearly it was thought that there was serious bodily injury, but [sentencing] counsel, for purposes of the [N]o [E]arly [R]elease [A]ct hearing, for the Court to make that finding requested the opportunity to be able to look at those records and, perhaps, point to those records and say, Your Honor, you know what, look at this and this and the abstract because I don't know, but looking at these different things perhaps this isn't serious bodily injury as a matter of law, Your Honor. Maybe you make a finding the other way, but my client never had the chance to do that.
In this argument, appellate counsel provides no explanation for sentencing counsel's failure to file the motion to vacate defendant's plea, as he indicated he would to the sentencing judge. The appellate panel rejected the argument advanced by appellate counsel, and affirmed defendant's sentence in an order dated January 12, 2000. The panel found that the sentence was not manifestly excessive or unduly punitive, and did not constitute an abuse of discretion.
On December 5, 2005, defendant filed a pro se PCR petition. At a hearing conducted on November 2, 2006, defendant argued, through his fourth assigned attorney, that he was denied the effective assistance of counsel when: (1) his trial counsel advised him to plead guilty to first-degree robbery subject to NERA, in the absence of competent evidence showing that the victim suffered serious bodily injury; (2) he was not informed at the plea hearing of the mandatory NERA five-year parole supervision period; (3) his sentencing counsel failed to file a motion to withdraw his guilty plea, either before the sentencing hearing or after, as suggested at the time by the trial court; and (4) his appellate counsel failed to argue these points on direct appeal.
The judge hearing the PCR petition rejected these arguments. The court found that defendant's petition was time-barred under Rule 3:22-12(a) because it was filed more than five years after defendant was sentenced, and defendant had not shown any basis from which to find excusable neglect for his failure to timely file. Despite this procedural bar, the PCR judge addressed the underlying merits of defendant's petition, and found that the evidence supported that the victim sustained serious bodily injury.
On appeal, in a brief filed by counsel, defendant raises the following arguments.
The trial court erred in denying defendant's petition for post-conviction relief.

*881 1. Defendant's petition was not time-barred and should have been considered in full.
2. Defendant established at least a prima facie case of ineffective assistance of counsel warranting a full evidentiary hearing and review on the merits.
3. The guilty plea colloquy was insufficient to establish first-degree robbery or a "violent crime" under the No Early Release Act. Thus, defendant's 14 year sentence with mandatory parole ineligibility is illegal.
4. Defendant's conviction is invalid also because he was never advised about the parole supervision that attached to his plea agreement.
Defendant raises the following points in his pro se supplemental brief:
POINT ONE
BECAUSE THE TRIAL COUNSEL ER[R]ED IN HAVING ACCEPTED THE PETITIONER[']S GUILTY PLEA DUE TO DEFENSE COUNSEL[']S INEFFECTIVE ASSISTANCE IN HIS DEFENSE.
POINT TWO
BECAUSE ALL OF THE OFFICERS OF THE COURT IN EVERY HEARING IN THE PETITIONER[']S CASE DENIED HIM DUE PROCESS, HIS SENTENCE IS ILLEGAL.
We begin our analysis by addressing the principal legal basis for the trial court's ruling, defendant's failure to file a timely PCR petition. Under Rule 3:22-12:
A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to the Rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.
Here, defendant is subject to the five-year limitation period because although he is attacking the validity of the sentence, he cannot establish that the court imposed an illegal sentence; that is, that the length of the sentence exceeds the maximum provided by law for a first-degree crime. State v. Flores, 228 N.J.Super. 586, 594, 550 A.2d 752 (App. Div.1988), certif. denied, 115 N.J. 78, 556 A.2d 1220 (1989). Thus, to overcome the procedural bar in R. 3:22-12, defendant must show that the delay in filing the PCR petition was attributable to excusable neglect.
The concept of excusable neglect encompasses more than simply providing a plausible explanation for a failure to file a timely PCR petition. To determine whether a defendant has asserted a sufficient basis for relaxing the Rule's time restraints, we "should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an `injustice' sufficient to relax the time limits." State v. Afanador, 151 N.J. 41, 52, 697 A.2d 529 (1997). Excusable neglect provides the means for a court to address and correct a criminal judgment where "adherence to it would result in an injustice." State v. McQuaid, 147 N.J. 464, 485, 688 A.2d 584 (1997); State v. Mitchell, 126 N.J. 565, 580, 601 A.2d 198 (1992).
In determining whether the defendant in McQuaid had been the victim of a manifest injustice, and therefore entitled to a relaxation of the five-year time restriction under R. 3:22-12, the Court explained the importance of the plea bargain within our criminal justice system:
A plea-bargain provides `mutuality of advantage' to both the defendant and the State. The defendant benefits by reducing his penal consequences and avoiding the public humiliation of a trial; *882 the State benefits by assuring that a guilty defendant is punished and by protecting valuable judicial and prosecutorial resources. However, plea bargains may be accepted only if the trial court is assured that a defendant enters his plea of guilty knowingly and voluntarily.

Rule 3:9-2 states in pertinent part:
The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first addressing the defendant personally and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as the result of any threats or any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.
As we have previously stated, Rule 3:9-2 requires that a defendant who pleads guilty do so voluntarily, knowingly, and intelligently. A defendant has "the right not to be `misinformed ... as to a material element of a plea negotiation, which [he] has relied thereon in entering his plea.'"
If a defendant's plea is not entered knowingly and voluntarily, Rule 3:21-1 allows a defendant to withdraw his or her plea. Rule 3:21-1 provides: "A motion to withdraw a plea of guilty ... shall be made before sentencing, but the court may permit it to be made thereafter to correct a manifest injustice." Following sentencing, if a defendant seeks to withdraw a guilty plea the court weighs more heavily the State's interest in finality and applies a more stringent standard.
[McQuaid, supra, 147 N.J. at 485-87, 688 A.2d 584. (internal citations omitted).]
Against this backdrop, and mindful of the appellate record made available to us, we are satisfied that there is no evidential support to sustain defendant's guilty plea to the crime of first-degree robbery by causing the victim serious bodily injury, thereby mandating that defendant serve a minimum of eighty-five percent of his fourteen-year sentence before being eligible for parole. It is therefore manifestly unjust to continue defendant's incarceration on this basis.
N.J.S.A. 2C:11-1(b) defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." The medical records produced by the State do not establish that the injuries suffered by the victim in this case satisfy this statutory criteria. There is no competent medical evidence that the "small right subdural hematoma" diagnosed by the medical professionals the day after the incident created a substantial risk of death, or caused serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Within two weeks of the attack the victim's headaches had largely subsided, and the doctor expected the hematoma to "resolve spontaneously."
As indispensable elements of both the crime of first-degree robbery and the sentencing provisions in NERA, the injuries sustained by the victim must be proven by the State. N.J.S.A. 2C:15-1(b); N.J.S.A. 2C:43-7.2. When the State seeks to meet that burden at a plea hearing through a defendant's stipulation, the court must assure itself that there is evidential support for the stipulation. The court's duty in this respect is made clear in Rule 3:9-2:

*883 A defendant may plead only guilty or not guilty to an offense. The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea. In addition to its inquiry of the defendant, the court may accept a written stipulation of facts, opinion, or state of mind that the defendant admits to be true, provided the stipulation is signed by the defendant, defense counsel, and the prosecutor.
Stated differently, the court must be satisfied that a defendant is not being misinformed as to any material fact supporting the plea. That responsibility is discharged in the exchange between defendant and the court, through which the court hears from defendant's "lips" that he has committed the acts which constitute the crime. State ex rel T.M., 166 N.J. 319, 327, 765 A.2d 735 (2001).
The stipulation entered into by defendant here cannot be given binding effect because it was not grounded on competent evidence. As the Court made clear in McQuaid, "Rule 3:9-2 requires that a defendant who pleads guilty do so voluntarily, knowingly, and intelligently." McQuaid, supra, 147 N.J. at 486, 688 A.2d 584. The enforceability of a plea bargain is thus predicated upon competent facts that support such a finding. Here, the medical evidence produced by the State in discovery shows that, in the course of committing a theft, defendant did not inflict serious bodily injury upon the victim. Defendant's stipulation that the victim of his attack sustained "serious bodily injury" was merely his lay opinion, unsupported by competent evidence. As such, it cannot be given preclusive effect as a matter of law. To enforce this stipulation under these circumstances would constitute the type of manifest injustice the Court in McQuaid made clear warrants the relaxation of the time restraints in R. 3:22-12.
We now turn to defendant's ineffective assistance argument. Our standard of review in this area of law is well-settled. To establish a prima facie claim of ineffective assistance of counsel, a defendant must show
that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.
[Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).]
In State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987), our Supreme Court held that defendants must satisfy the Strickland test to show a violation of Article 1, paragraph 10 of the New Jersey Constitution.
Against this standard, we are satisfied that defendant presented a prima facie case of ineffective assistance of counsel. As to the first prong, given the conspicuous absence of evidence, defendant has *884 made a prima facie showing that his counsel was deficient by permitting him to stipulate that the victim sustained serious bodily injury. Defendant has also established the second prong of the Strickland/Fritz test. The prejudice caused by counsel's deficiency is readily ascertainable. In the absence of the victim's sustaining serious bodily injury, it can be argued that defendant was sentenced to a legally unwarranted term of imprisonment, with a legally unwarranted period of parole ineligibility.
Once a defendant has made out a prima facie case of ineffective assistance of counsel, he or she is entitled to an evidentiary hearing. State v. Preciose, 129 N.J. 451, 462, 609 A.2d 1280 (1992). We are thus compelled to remand this matter for the trial court to conduct an evidentiary hearing in which defendant can expand upon the evidence presented here. The State would also have the opportunity to challenge this evidence, and supplement the record with any relevant discovery materials given to defense counsel at the time of the plea hearing, but not included in the appellate record.
Reversed and remanded.
NOTES
[1] As part of the plea agreement, defendant also pled guilty to unrelated CDS charges. Defendant has not challenged those charges in this appeal.
[2] The NERA provisions in effect at the time defendant pled guilty required the sentencing court to find that defendant committed a "violent crime." The statute defined "violent crime" as any first or second degree offense in which the actor causes death or serious bodily injury. N.J.S.A. 2C:43-7.2(d); State v. Thomas, 166 N.J. 560, 567-68, 767 A.2d 459 (2001). The Legislature amended NERA on June 29, 2001, eliminating the "violent crime" provision, opting instead to enumerate the specific crimes subject to NERA.
[3] In its brief before us, the State argues that the sentencing court also relied on the statements made by the victim's father concerning the extent of the injuries suffered by his son and his lengthy period of treatment and recovery. These statements, however, were received by the court after it had ruled on defense counsel's application. Therefore, the statements played no role in the court's reasoning and ultimate decision.
[4] See State v. Deutsch, 34 N.J. 190, 198, 168 A.2d 12 (1961); R. 3:21-1.