**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0139-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

K.A.,

    Defendant-Appellant.

_____

Submitted October 10, 2017 – Decided November 9, 2017

Before Judges Messano and O'Connor.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 07-05-1614.

Joseph E. Krakora, Public Defender, attorney for appellant (William Welaj, Designated Counsel, on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant K.A.[1] appeals from the denial of his petition for post-conviction relief (PCR) following an evidentiary hearing. For the reasons that follow, we affirm.

I

In April 2008, defendant pled guilty to first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(a). Specifically, he admitted he had vaginal intercourse with his daughter when she was fifteen years of age.  In July 2008, he was sentenced to a seventy-four year term of imprisonment, subject to an eighty-five percent period of parole ineligibility; the date of the judgment of conviction was August 1, 2008.  Defendant appealed his sentence, which was reviewed before an Excessive Sentence Oral Argument (ESOA) Panel. Finding the sentence manifestly excessive and unduly punitive, we remanded for resentencing.  State v. Ali, No. A-4887-08 (App. Div. June 28, 2010).

On October 22, 2010, the trial court resentenced defendant to a fifty-year term of imprisonment, subject to an eighty-five percent period of parole ineligibility.  Defendant appealed but, in October 2011, his sentence was affirmed by an ESOA Panel. State v. Ali, No. A-5611-10 (App. Div. Oct. 20, 2011).  On

---

[1]  To protect the victim's privacy, we refer to defendant by his initials.

2

October 23, 2012, our Supreme Court denied defendant's petition for certification. State v. Ali, 212 N.J. 431 (2012).

On October 15, 2014, defendant filed a petition for PCR, and subsequently filed an amended petition for PCR. In those petitions, defendant claims that, well before trial, the State extended a plea offer to defendant, the terms of which were as follows. In exchange for pleading guilty to first-degree aggravated sexual assault, the State would recommend a twenty year term of imprisonment, subject to an eighty-five percent period of parole ineligibility, and dismiss the remaining charges.[2] Defendant claims his attorney discouraged him from accepting the offer, advising he should hold out for a better plea arrangement. Swayed by his attorney's advice, defendant rejected the plea offer.

Defendant alleges that, after the jury was selected, the State offered him "an open plea of twenty years to life." When his attorney convinced defendant he could persuade the court to sentence defendant to a fifteen-year term of imprisonment,

---

[2] In addition to the charge to which he ultimately pled, defendant had been charged with three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); five counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); one count of second-degree endangering the welfare of a child; and two counts of third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a).

3

defendant decided to accept the open plea. Defendant was then sentenced to a seventy-four year term of imprisonment, which was later reduced to a fifty-year term. Defendant claims that had he known at the time the first plea offer was tendered that he was exposed to a sentence of greater than twenty years, he would have accepted such offer. He also asserts his attorney failed to warn him that, with six convictions on his record, he was eligible for a discretionary extended term.

In his petitions, defendant acknowledges his initial PCR petition was filed more than five years after the entry of the judgment of conviction and, thus, was untimely. See Rule 3:22-12(a)(1). He claimed his delay in filing the petition was due to excusable neglect, and that enforcement of the time bar would result in a fundamental injustice. See Rule 3:22-12(a)(1)(A).

Defendant admits that when the Supreme Court denied his petition for certification in October 2012, he knew he had to file a PCR petition before August 1, 2013. In preparation for that filing, in November 2012, defendant contacted an organization that provides legal assistance to prisoners. This entity assisted defendant by providing a paralegal to prepare his PCR petition, but the paralegal was fired in April 2013. Another paralegal took over the file, but he was transferred to another prison shortly thereafter.

4

Defendant was then placed in administrative segregation for violating a prohibited act. While in segregation, he was advised by another inmate "not trained in law" that defendant had five years from the time he was re-sentenced to file a PCR petition. Thus, defendant assumed he had until October 22, 2015 to file his petition. Defendant also claims it took a year to retrieve his paperwork from the last paralegal who had been helping him, why his petition was filed out of time.

After reviewing the parties' pleadings, the PCR court ordered an evidentiary hearing. The witnesses at the hearing were defendant, his attorney (attorney), and the assistant prosecutor (prosecutor) who handled this matter for the State.

On the question whether the petition was time-barred, defendant's testimony was essentially consistent with what he stated in his verified petitions. The court found the petition time-barred, noting neither inaccurate legal advice about nor ignorance of the deadline within which to file a petition is excusable neglect. Further, the court noted defendant failed to articulate how the failure to have certain paperwork, the contents of which defendant failed to divulge, impaired his ability to file a timely petition. In addition, the court noted defendant was not asserting in his petitions that he was in fact

5

innocent of the charge to which he pled or challenging his sentence.

The court also addressed the substantive issues. Before recounting the material testimony the PCR court found credible on such issues, we provide some background facts. Defendant impregnated the victim and she terminated the pregnancy. Some of the fetal tissue was preserved by the staff at the medical facility at which the termination took place, and the State ultimately had the tissue tested to determine if defendant was the father of the fetus. Before it made its first plea offer, the State provided defendant with a report from a "DNA expert." The report was not included in the record, but we surmise from other documents provided that the expert claimed sufficient evidence existed to conclude defendant was the father of the fetus.

However, the attorney noted the expert's opinion was not stated to be within a reasonable degree of medical probability. The attorney deemed this omission significant because, without sufficient medical or scientific evidence to link the fetus to defendant, proof defendant sexually assaulted his daughter was going to be limited to the credibility of her testimony. To preclude the State from having sufficient time to correct the deficiency in the expert's report before trial, the attorney

6

purposely did not bring the subject flaw to the State's attention until the parties appeared for jury selection.

When the parties ultimately appeared to pick a jury, the attorney informed the court defendant was objecting to the admission of the expert's testimony because of the subject flaw in his opinion. However, jury selection was postponed for a few days and, in the interim, the State obtained an amended expert's report correcting the deficiency in the expert's opinion.

After the jury was selected but before opening statements, the attorney moved to bar the expert's testimony. The attorney argued it was unfair to allow the expert to testify to any opinion that first appeared in the expert's amended report because the report was served on the eve of trial. The court rejected defendant's argument.

The attorney then challenged the chain of custody of the fetal tissue, which was used to establish the expert's opinion defendant was the father of the fetus. After a hearing, the court found no flaw existed in the chain of custody. Immediately thereafter the parties engaged in plea negotiations and defendant pled guilty that day.

The material evidence the PCR court found credible at the evidentiary hearing was as follows. Before the matter was listed for trial, the State made a plea offer that defendant

7

plead to first-degree aggravated sexual assault, and the State would recommend a twenty year term of imprisonment, with an eighty-five percent ineligibility period, and dismiss the remaining charges. The attorney advised defendant to reject the offer because of the flaw in the DNA expert's opinion, and further informed defendant that if he declined the offer, the attorney would attempt to negotiate a prison term of fifteen to twenty years. The attorney also told defendant he wanted to challenge the chain of custody of the fetal tissue. Defendant rejected the offer, which was subsequently withdrawn.

After a jury was selected, the court rejected defendant's motion to bar the DNA expert's testimony, as well as his challenge to the chain of custody of the fetal tissue. The State then made its second offer. That offer was defendant plead to first-degree aggravated assault, but all other terms of the plea deal would be open. Before the attorney discussed this offer with defendant, he and the prosecutor met with the trial judge in chambers.

The attorney claimed the court indicated it would sentence defendant to a term of imprisonment between twenty-six and twenty-eight years. The prosecutor asserted the court made no mention of how it intended to sentence defendant. The PCR court did not explicitly resolve who was the more credible. However,

8

the court found the attorney in fact advised defendant he was

exposed to an "extreme sentence," but also informed defendant

that, based upon the court's comments in chambers, defendant

probably would be sentenced to between twenty-six and twenty-

eight years in prison.

The PCR court noted that, during the plea hearing but

before defendant pled guilty, the attorney, the prosecutor, and

the court stated defendant would be exposed to a term of

imprisonment from twenty years to life by accepting the State's

offer.  Moreover, defendant admitted he understood he was

exposed to a sentence of twenty years to life if he pled guilty.

The court found credible defendant's concession at the PCR

hearing that the attorney did in fact inform him before he pled

guilty that his sentence could be twenty years to life in prison

and, further, the attorney did not promise any particular

result.  In addition, the court noted defendant signed a notice

informing him he was subject to an extended term and defendant

acknowledged he had six previous convictions before he pled

guilty.

The PCR court determined defendant knew before he pled to

the open plea that his sentencing exposure was twenty years to

life.  Thus, even if his attorney told him the court indicated

in chambers it would impose a prison term of only twenty-six to

9

twenty-eight years, defendant was aware the court could impose a far greater term of imprisonment. The court ultimately concluded:

> [I]n the context of an open plea, where no result was promised or guaranteed, and where the — where the defendant was told and understood his full sentencing exposure, does not constitute deficient performance as contemplated by Strickland.
>
> Accordingly, even if [the attorney] was ineffective in failing to advise the defendant of his sentence exposure under the open plea, and I find that that's not, in fact, the case, defendant failed to prove that he was prejudiced by this deficiency because the court adequately informed the defendant of his exposure at the plea hearing.

On April 15, 2016, the court entered an order denying defendant his request for post-conviction relief.

II

On appeal, defendant presents the following arguments for our consideration.

> POINT I — THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF, IN PART, UPON PROCEDURAL GROUNDS PURSUANT TO RULE 3:22-12(a)(1).
>
> POINT II — THE TRIAL COURT ERRED IN DENYNG THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF FOLLOWING THE EVIDENTIARY HEARING SINCE THE DEFENDANT FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION ARISING OUT OF HIS GUILTY PLEA, WHILE THE FACTUAL FINDINGS MADE BY THE TRIAL COURT UNDERLYING ITS

10

DENIAL WERE NOT SUPPORTED BY THE RECORD
ESTABLISHED AT THE HEARING.

A

Rule 3:22-12(a)(1) states a defendant's first petition for PCR shall be filed no more than five years after the entry of the judgment of conviction. However, a court may relax the five-year time bar "if the petition alleges facts showing the filing was untimely due to defendant's excusable neglect and there is a reasonable probability that, if defendant's factual assertions were found to be true, enforcement of the time bar would result in a fundamental injustice." See Rule 3:22-12(a)(1)(A).

Here, the judgment of conviction was entered on August 1, 2008 and defendant's first and only petition for PCR was filed on October 15, 2014. Therefore, his petition is procedurally barred as untimely unless the delay was due to defendant's excusable neglect and there is a reasonable probability enforcement of the time-bar would result in a fundamental injustice. Ibid.

"The concept of excusable neglect encompasses more than simply providing a plausible explanation for a failure to file a timely PCR petition." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009). If the petitioner fails to allege sufficient

11

facts, this rule bars the claim. State v. Mitchell, 126 N.J. 565, 576 (1992). A defendant's lack of sophistication in the law does not relax the time-bar. State v. Murray, 162 N.J. 240, 246 (2000).

Defendant fails to provide any facts to show his failure to timely file his petition was due to excusable neglect. Defendant admitted he knew well in advance of the five-year deadline he had to file a petition before August 1, 2013. Defendant claims that after the two paralegals ceased working on his file, another inmate told him he had five years from the date of his resentencing, which was on October 22, 2010, to file a PCR. However, defendant does not provide any plausible reason why his reliance on the inmate's advice should be deemed excusable.

Defendant also claims he needed to retrieve his paperwork from the second paralegal, but defendant does not provide any reason why that was necessary in order for him to fill out and file a timely petition. As the PCR court pointed out, the forms for self-represented litigants were simple and easy to complete.

Defendant asserts for the first time on appeal that neither the court that originally sentenced him, his trial attorney, nor appellate counsel informed him of the time restriction within which to file a PCR petition. However, because this issue was

12

not raised before the PCR court, "[g]enerally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012).

Notwithstanding, for defendant's benefit we observe that when defendant was originally sentenced, the court was not required to inform defendants of the time within which a PCR petition had to be filed, as presently required by Rule 3:21-4(h). More important, even if the court had an obligation to advise defendant of the time limitations in Rule 3:22-12(a)(1), the result would have been the same because defendant knew he was required to file his petition before August 1, 2013. Therefore, the PCR court correctly found defendant failed to show there existed excusable neglect for failing to timely file his PCR petition.

Defendant contends enforcement of the time bar would result in a fundamental injustice because he received ineffective assistance from the attorney. Although the failure to timely file a petition in the absence of excusable neglect obviates the necessity of considering this issue, see Rule 3:22-12(a)(1)(A), for the sake of completeness we note, even if there were excusable neglect, for the reasons set forth below defendant fails to show the attorney rendered ineffective assistance.

13

B

We turn to defendant's second argument point, which contends the court's factual findings are not supported by the record, and the attorney failed to render effective assistance. We readily dispense with the former contention by noting the PCR court's findings are amply supported by the evidence adduced during the evidentiary hearing. Before addressing the contention counsel was ineffective, we review the law governing our review.

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). In order to prevail on a claim of ineffective assistance of counsel, defendant must meet a two-prong test. The first prong is counsel's performance was deficient and he made errors so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution. Strickland, supra, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068, 80 L. Ed. 2d at 693, 698.

The second prong is the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional

14

errors, the result of the proceeding would have been different."

Ibid. If a defendant has pled guilty, the second prong a defendant must fulfill is "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty but would have insisted on going to trial.'" State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)).

"[J]udicial scrutiny of the attorney's performance must be highly deferential." State v. Chung, 210 N.J. Super. 427, 434 (App. Div. 1986). Further,

> [e]very effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time. Id. at 689, 104 S. Ct. at 2065. Furthermore, an appellate court reviewing counsel's performance must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 690, 104 S. Ct. at 2066.
>
> [Ibid.]

Having reviewed the record and the applicable legal principles, we are satisfied defendant failed to show the attorney was ineffective.

In his brief, defendant clarifies his allegations of

15

ineffectiveness are the attorney: (1) failed to appreciate the strength of the State's case when it made its first plea offer and advise defendant to accept this plea offer; (2) advised him to reject "a 20 year plea offer and instead enter into an 'open' plea subjecting him to a sentence between 20 years and life imprisonment, further advising him he could obtain a much more beneficial sentence under such an 'open' plea;" and (3) failed to advise him of the adverse ramifications of entering into an open plea.

We are not persuaded by any of these arguments. There is no evidence the attorney failed to appreciate the strength of the State's case when the State extended its first plea offer, or that he was ineffective for failing to recommend defendant accept this offer. When the first offer was made, the posture of the case was very different from what it was by the time the second offer was extended. When the second offer was made, the State's case was far stronger; the State had just come into possession of evidence that established the causal link between the fetus and defendant, conclusively showing defendant had vaginally penetrated his daughter.

The State did not have that evidence at the time the first offer was extended. At that earlier point in the litigation, the State's case was dependent upon whether the jury would find

16

the victim credible, a form of proof far less potent than what the amended expert's report provided. At that point, defendant had appreciably more bargaining power to negotiate a plea agreement. Mindful of the weaknesses in the State's case, the attorney advised defendant to reject the initial plea offer so he could attempt to secure a more favorable one. Defendant has not provided any persuasive reason why counsel was ineffective for recommending this course of action at that time.

There is no credible evidence to support defendant's claim the attorney advised him to reject "a 20 year plea offer and instead enter into an 'open' plea subjecting him to a sentence between 20 years and life imprisonment, [and] further advis[ed] him he could obtain a much more beneficial sentence under such an 'open' plea." The attorney never advised defendant to reject a twenty-year plea offer in order to accept an open plea in its stead. At the time the attorney advised defendant to accept the open plea, the offer to plea to the twenty-year term of imprisonment no longer existed. The two plea offers were made at two very different points during the prosecution of this case.

Similarly, there is no credible evidence the attorney failed to advise defendant of the adverse ramifications of entering into the open plea. In fact, there is considerable

17

evidence the attorney advised defendant of the sentencing consequences of the open plea.

Finally, to the extent we have not addressed any of defendant's arguments, it is because they were without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-0139-16T1