**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0430-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ILYA BOBROV,

    Defendant-Appellant.

_____

Submitted March 18, 2020 – Decided June 2, 2020

Before Judges Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 04-06-0629.

Terry Webb, attorney for appellant.

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Tiffany M. Russo, Assistant Prosecutor, on the brief).

PER CURIAM

    Defendant Ilya Bobrov appeals the August 17, 2018 denial of his post-conviction relief (PCR) petition without an evidentiary hearing. We affirm.

Defendant raises the following issues on appeal:

> POINT I: PRIOR COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO ADVISE [DEFENDANT] OF THE POTENTIAL IMMIGRATION CONSEQUENCES OF ENTERING A GUILTY PLEA.
>
> POINT II: [DEFENDANT]'S RIGHTS TO FAIR TRIAL UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTION WAS VIOLATED BY THE STATE'S FAILURE TO COMPLY WITH THE VIENNA CONVENTION OF CONSULAR RELATIONS.
>
> POINT III: THERE WAS NO FACTUAL BASIS TO SUPPORT [DEFENDANT]'S PLEA; THUS [DEFENDANT]'S SENTENCE WAS ILLEGAL AND MAY BE CORRECTED AT ANY TIME.

Defendant is a citizen of Russia who was granted lawful permanent resident status of the United States in August 1999, when he was sixteen years old. In May 2003, defendant was arrested in Union County; it is not apparent from the record what the original charges were, but on November 20, 2003, he was sentenced to one year of probation and a six-month suspension of his driver's license for a disorderly persons (DP) offense related to drugs.

On November 21, 2003, defendant was again arrested and charged with third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1), for which he was indicted in Morris County. This offense is the subject of the PCR petition. On

July 15, 2004, defendant initially entered a not-guilty plea with his counsel from the Office of the Public Defender and applied for Pretrial Intervention (PTI) the same day.

On July 24, 2004, defendant was once again arrested. This time, he was charged with third-degree resisting arrest, N.J.S.A. 2C:29-2(a), which was later downgraded to fourth-degree obstruction by flight, N.J.S.A. 2C:29-1(a), and leaving the scene of an accident, N.J.S.A.39:4-129(a), among other charges that were ultimately dropped.

It is not clear from the record what happened with defendant's PTI application. However, on September 16, 2004, with a different attorney, defendant pled guilty to the November 2003 third-degree heroin possession charge, for which he had been indicted, as well as the July 2004 fourth-degree obstruction by flight and leaving the scene of an accident charges, for which he waived indictment.

Defendant's exposure was up to five years for the heroin possession charge, eighteen months for obstruction by flight charge, and 180 days for leaving the scene of an accident. The State recommended a probationary sentence of one to five years with the possibility of 180 days in the Morris County jail, dependent on a substance abuse evaluation, proof of drug

3

counselling, and drug treatment. Defendant testified to the plea judge that his attorney reviewed the sentencing exposure with him, he was entering the plea voluntarily, and he understood he was giving up the right to go to trial and to confront witnesses. Defendant also stated his attorney went over every question on the plea form with him, and that he signed and initialed each page. Question Seventeen on the plea form, which asks "[d]o you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty," was circled "[y]es."

Defendant also testified that he was aware he would have a criminal record, and stated he was on probation in Union County for his first offense. When the plea judge asked defense counsel if there was anything he would like to follow up on, defense counsel responded, "I would like the court . . . if you would, to review [Question Seventeen] about the citizenship." The plea judge read over Question Seventeen and asked defendant if he was a United States citizen, to which defendant replied that he had a green card and planned to get his citizenship. Defendant indicated he thought he might have a problem getting his citizenship because of his arrest in Union County, and defense counsel stated he explained to defendant that the current charges to which he was pleading guilty "could result in more problems." The following exchange then took place:

4

[THE COURT]: And you do understand that because of your status in this country, you may be deported?

[DEFENDANT]: I understand. Is it possible or it's likely?

[THE COURT]: It's possible.

Defense counsel then questioned defendant about the factual basis for the plea.

For the heroin possession charge, the plea judge sentenced defendant to three years of probation, with the condition of 180 days in the Morris County jail, an inpatient drug treatment program, and a six-month suspension of his driver's license. For the fourth-degree obstruction accusation, defendant was sentenced to three years of probation to run concurrent, and for leaving the scene of an accident, defendant was sentenced to forty-five days in the Morris County jail to run concurrent with the 180 days, and a one-year suspension of his driver's license to run consecutive with the six-month suspension. Should defendant be admitted to an inpatient drug treatment facility, his jail sentence would be time served at that time.

Over eight years later, in April 2013, defendant arrived at John F. Kennedy International Airport after a trip with his family to Russia and sought re-admission to the United States as a lawful permanent resident. However, defendant was charged as subject to removal from the United States based on

5

his third-degree heroin possession conviction under N.J.S.A. 2C:35-10(a)(1)

"pursuant to the following provisions of law":

> Section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act, as amended, in that you are an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of (or a conspiracy or attempt to violate) any law or regulation of a [s]tate, the United States, or a foreign country relating to a controlled substances (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. 802)).

The April 22, 2013 notice to appear ordered defendant to appear before an immigration judge of the United States Department of Justice "[a]t a place and time to be determined on a date to be set at a time to be set to show why you should not be removed from the United States based on the charge(s) set forth above."

Almost five years later, on April 19, 2018, defendant filed a PCR petition through counsel asserting he was given incorrect information when he was told deportation was a "possibility," which rendered defendant's guilty plea neither knowing nor voluntary and constituted ineffective assistance of counsel under Nuñez-Valdéz.[1]  At the hearing, PCR counsel argued the advice that deportation was possible "wasn't true" because deportation "was mandatory . . . and we know

---

[1]  State v. Nuñez-Valdéz, 200 N.J. 129 (2009).

that because defendant got paperwork now that because of this plea he is going to be deported back to a country where he knows no one." Defendant asserted he never would have taken the plea had he known deportation was mandatory, as his whole life was in the United States and did not have any life or ties left in Russia.

Defendant also argued he had defenses never asserted by his original counsel, as well as that there was no basis for defendant's rejection from PTI, and that plea counsel should have fought for it. Defendant asked the court to vacate his guilty plea.

The PCR judge denied the petition because there were no grounds on which he could vacate the guilty plea. The judge noted that the plea judge's voir dire was "thorough" and that there was a discussion during the plea hearing about how the plea and the prior adjudication from Union County might cause defendant a problem getting his citizenship. The PCR judge noted defendant was specifically asked whether he understood he may be deported and answered in the affirmative.

As for defendant's question during the plea hearing asking whether it was possible or likely that he would be deported, and the answer that it was "possible," the PCR judge stated:

> [W]hat has happened in my understanding is that I will characterize it as a result of changing attitudes and policies regarding immigration, deportation, the status of non-citizens in the country. We have come from a situation where in 2004 what was described as possible is now a very real threat. And has moved from I would say possible to very probable.

He noted the answer that deportation was "possible," when considered in 2018 versus in 2004 at the time of the plea hearing, "a few things . . . have happened since then, you will be facing the high probability of being deported." He pointed out that plea counsel and the plea judge

> could not have known that. That would require an understanding of what I'll call a change in political and enforcement culture [regarding] immigration status . . . . And so for that reason it's in my view not easy to conclude the attorney at that time and the court in making sure that a plea is being done knowingly were off the mark in any substantial way.

The judge stated that describing deportation as "possible" at the time of the plea was correct, noting that defendant "has been allowed to remain substantially unmolested in the country for a decade and a half . . . almost and has a business," and that the deportation defendant currently faced boiled down to a change in the "attitudes, approaches, and actions regarding immigration and deportation."

Although the PCR judge sympathized with defendant's plight, noting he had moved on to live a productive life from the time of his criminal charges,

A-0430-18T4

other than some subsequent DP charges for marijuana-related activities, the PCR judge did not find that defendant's removal from what had become his home to a foreign and strange place was a "fundamental injustice" in the sense that an error or violation played a role in the determination of defendant's guilt in order to overcome the five-year time bar on PCR proceedings.

The PCR judge stated he also could not find that the language of the voir dire and discussion at the time defendant asked whether it was possible or likely that he would be deported should he plead guilty was "false," even though it was ambiguous. Rather, the PCR judge found it was "in a sense true" and it was "only in retrospect that it turned out to be I don't even know if it can be said misleading because possible means it might be a consequence."

Although noting defendant's life was in the United States and he appeared to be doing well as a small business owner, the PCR judge was unable to find a legal basis to vacate the guilty plea, and stated that even though he was not happy with the result of defendant's deportation, he could not put himself in the place of the immigration authorities. The PCR judge hoped that the immigration authorities would consider the remoteness of the conviction, and defendant's "reasonable level of rehabilitation and a turn to competent living."

This appeal followed.

9

Where no evidentiary hearing was conducted in the denial of a PCR petition, "we may review the factual inferences the court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). We also review de novo the trial court's conclusions of law. Ibid.

PCR is "New Jersey's analogue to the federal writ of habeas corpus." State v. Cummings, 321 N.J. Super. 154, 164 (App. Div. 1999) (citing State v. Afanador, 151 N.J. 41, 49 (1997); State v. Preciose, 129 N.J. 451, 459 (1992)). A PCR claim "must be established by a preponderance of the credible evidence." State v. McQuaid, 147 N.J. 464, 483 (1997) (citing Preciose, 129 N.J. at 459).

PCR "is cognizable if based upon . . . [s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." R. 3:22-2(a). The Sixth Amendment of the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution both guarantee effective assistance of legal defense counsel to a person accused of a crime. See State v. Porter, 216 N.J. 343, 352 (2013) (citing Strickland v. Washington, 466 U.S. 668, 685-86 (1984)).

Generally, a defendant must seek relief through a direct appeal under Rule 3:22-3 and "may not use [PCR] to assert a new claim that could have been raised on direct appeal." McQuaid, 147 N.J. at 483 (citing R. 3:22-4). However, a

defendant may use PCR "to challenge . . . [a] final judgment of conviction which could not have been raised on direct appeal." Id. at 482-83 (citing Preciose, 129 N.J. at 459). "[P]etitioners are rarely barred from raising ineffective-assistance-of-counsel claims on [PCR]" under New Jersey case law, Preciose, 129 N.J. at 459-60, and "[o]ur courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record," id. at 460.

Defendant argues he did not enter his plea knowingly and intelligently, as he contends plea counsel grossly misrepresented that deportation was merely possible and not likely, which he asserts was incorrect as the statute mandates removal for the charge to which defendant pled guilty. Defendant asserts he never would have pled guilty had he known it was likely he would be deported.

In determining whether a defendant has established ineffective assistance of counsel, the claim must be evaluated under the two-prong Strickland test, where "a reviewing court must determine: (1) whether counsel's performance 'fell below an objective standard of reasonableness,' . . . and if so, (2) whether there exists a 'reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" State v. Castagna, 187 N.J. 293, 313-14 (2006) (quoting Strickland, 466 U.S. at 688, 694). See also State v. Fritz, 105 N.J.

42, 58 (1987) (adopting the Strickland test in New Jersey). Where a claim of ineffective assistance of counsel follows a guilty plea, the defendant must prove counsel's deficient representation and "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." State v. Brewster, 429 N.J. Super. 387, 392 (App. Div. 2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). A defendant may satisfy the first prong of the Strickland test "by a showing that counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Allegro, 193 N.J. 352, 366 (2008) (quoting Castagna, 187 N.J. at 314).

Plea counsel is required to provide a non-citizen defendant sufficient information regarding immigration consequences of a guilty plea. See State v. Nuñez-Valdéz, 200 N.J. 129, 140, 143 (2009). "[W]rong or inaccurate advice from counsel about the immigration consequences, and specifically deportation, that would result from entry of a guilty plea, present[s] ineffective assistance of counsel." State v. Gaitan, 209 N.J. 339, 361 (2012).

Padilla, decided in 2010, six years after defendant here pled to his offenses, holds that counsel has an affirmative duty to correctly advise a defendant of the risk of deportation where the terms of the relevant immigration

statute are "succinct, clear, and explicit in defining the removal consequence" of a plea; thus, where deportation for an offense is presumptively mandatory, counsel must specifically advise defendant of that fact. Gaitan, 209 N.J. at 373; Padilla v. Kentucky, 559 U.S. 356, 368-69 (2010). However, the New Jersey Supreme Court held in Gaitan that Padilla is not retroactive, but rather that Nuñez-Valdéz still governs pre-Padilla cases. Gaitan, 209 N.J. at 373-74.

Nuñez-Valdéz holds that there may be ineffective assistance of counsel where advice given a defendant regarding the removal consequences of a guilty plea is false, or inaccurate and affirmatively misleading, such as where counsel tells a defendant there will be no immigration consequences when pleading to an offense that is indeed presumptively deportable. Gaitan, 209 N.J. at 381; Nuñez-Valdéz, 200 N.J. at 140-43. However, in pre-Padilla cases, where a defendant is not given affirmatively misleading advice, but rather there is an absence of advice, such as where there is evidence that a defendant did review Question Seventeen on the plea form and was told there "may" be immigration consequences to his plea, even for an offense that was presumptively deportable, that advice is sufficient. Gaitan, 209 N.J. at 347, 374-76, 378-79, 381.

In Brewster, the Appellate Division found defendant did not show ineffective assistance of counsel where he circled Question Seventeen of the

plea form that informed him he "may" be deported, which was "not unreasonable advice or outside the norms of the profession," where at the time, in 1998,

> defense counsel could not have reasonably predicted the certainty or even likelihood of defendant's deportation. In fact, it might have been incorrect at that time for defense counsel to have advised defendant he would surely, or likely, be deported and thus potentially have caused defendant to forego a favorable plea offer and to accept the likelihood of a longer term in state prison by conviction at trial. A longer prison sentence would not have saved defendant from deportation.
>
> [429 N.J. Super. at 397-98.]

The Brewster court noted that federal immigration laws were still evolving and deportation was not always enforced at the time of the defendant's plea, as was evidenced by the fact that the defendant "remained undisturbed by federal immigration officials for almost twelve years" after his plea. Id. at 396.

Here, one of the charges to which defendant pled guilty was N.J.S.A. 2C:35-10(a)(1), third-degree possession of heroin. Under 8 U.S.C. § 1227(a)(2)(B)(i), a non-citizen "who at any time after admission has been convicted of a violation of . . . any law or regulation of a [s]tate, the United States, or a foreign country relating to a controlled substance . . . other than a

14

single offense involving possession for one's own use of [thirty] grams or less of marijuana, is deportable." (emphasis added).[2]

However, even though the offense to which defendant pled guilty was mandatorily deportable, he pled in 2004, well before the 2010 decision in Padilla, and thus the information he received that deportation was "possible" was sufficient under Gaitan, Nuñez-Valdéz, and Brewster. Like Brewster, the fact that defendant was able to go without deportation proceedings eight and a half years after his plea, and had still not been deported at the time of his PCR hearing around thirteen years after his plea, is evidence he was correctly informed that deportation was "possible."

Further, defendant's claims are time-barred, as under Rule 3:22-12, a first petition for PCR may not be filed more than five years after the date of entry of the judgment of conviction being challenged unless "it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice . . . ." R. 3:22-12(a)(1)(A). The purpose of the PCR five-year time bar

---

[2]   This offense also renders a non-citizen inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II).

"is to encourage defendants reasonably believing they have grounds for [PCR] to bring their claims swiftly and discourages them from sitting on their rights until it is simply too late for a court to render justice." Cummings, 321 N.J. Super. at 165.

Here, defendant filed his first PCR petition well over five years after his September 2004 plea. Therefore, defendant is time-barred unless he can show excusable neglect. Excusable neglect "encompasses more than simply providing a plausible explanation for a failure to file a timely PCR petition." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009). To determine whether excusable neglect is present, the court "should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." Ibid. (quoting Afanador, 151 N.J. at 52).

Defendant argues he can show excusable neglect in that he did not have any way of knowing at the time he entered his plea nor until the time deportation proceedings were initiated about eight and a half years later that PCR was necessary. He contends the "assurances" he received at his plea hearing made it reasonable for him not to worry about deportation or take any steps such as

PCR to mitigate any potential consequences of a prior guilty plea on a "future potential deportation he had no reason to believe was coming."

However, defendant was first aware of the possible deportation consequences from the time he entered his plea, thirteen years before he filed his PCR petition. Therefore, defendant's claims are time-barred, as he has not shown excusable neglect in that he was aware deportation was a possibility from the time he entered his plea, and, even after deportation proceedings were initiated against him, did not act promptly but waited another four years.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION