# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2990-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GREGORY ARMAND,
a/k/a JREG LEONARD,

     Defendant-Appellant.

_____

Submitted June 3, 2025 – Decided July 7, 2025

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 02-03-1146.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (John J. Bannan, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Gregory Armand appeals from the Law Division's April 10, 2024 denial of his petition for post-conviction relief ("PCR") without an evidentiary hearing. We affirm substantially for the reasons set forth by Judge Jennifer Critchley in her well-reasoned, written opinion.

I.

On December 4, 2001, the East Orange Police Department responded to a Halstead Street location, where they met C.W.,[1] twelve years old at the time, who alleged defendant, age twenty-three, had sexually assaulted her. C.W. identified defendant, and he was arrested at the scene.

C.W. reported to the police that her friend C.F., also twelve years old, had been dating defendant, and that on November 30, 2001, she had gone with C.F. to spend the night with defendant. C.W. reported that during the night, defendant touched her vagina, breasts and buttocks. C.W. stated this initially occurred over her clothing but that defendant pulled down her shorts and attempted to spread her legs. Defendant then began placing a condom on his penis. C.W. stated she pushed defendant away and no further physical contact took place. C.W. also stated there was another male in the house who was

---

[1] Initials are used, and parties' names are otherwise not used, to protect the victim in this matter concerning a sexual offense. R. 1:38-3(c)(12).

identified only as "Cousin," and that he had also touched her breasts over her clothing. C.W. said she told "Cousin" to leave her alone, which he did, and no further incident occurred with him.

In March 2002, a grand jury indicted defendant for second degree attempted aggravated sexual assault, N.J.S.A. 2C:5-1; three counts of second-degree sexual assault by sexual contact, N.J.S.A. 2C:14-2(b); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). In May 2002, defendant pled guilty to third degree endangering the welfare of a child.[2]

In October 2002, a sentencing hearing was held. At sentencing, counsel addressed statements made by defendant to the psychologist who conducted his Avenel Evaluation where defendant denied committing the offense. Counsel stated defendant was "here to correct that now, . . . he's going to basically stick with what he said at the time of his guilty plea." The judge then asked defendant if he remembered the statements he made to the court at the plea hearing that he "grabbed the buttocks of a 12-year-old female," and defendant answered "[y]es, Your Honor." The judge also asked defendant if anyone forced or threatened

---

[2] Because this case dates back to 2001, the indictment, judgment of conviction, and plea hearing transcript were unavailable. As such, the PCR Court relied upon defendant's pre-sentence report ("PSR") for the statement of facts and procedural history.

A-2990-23

him to make that admission, to which defendant answered "[n]o, Your Honor." When asked by the judge if what he told him during the plea hearing was true, as to touching the buttocks of C.W., defendant answered "[y]es, Your Honor." Defendant answered affirmatively that he had the opportunity to speak to his counsel on the day of the sentencing hearing. Defendant was sentenced in accordance with the plea agreement to time served, three years' probation, and community supervision for life pursuant to Megan's Law, N.J.S.A. 2C:7-20.

In 2009, seven years after his conviction, defendant hired private counsel to pursue PCR. However, no petition was ever filed. Due to ethics violations, unrelated to defendant, counsel was suspended from practicing law twice, and eventually, in 2017, disbarred.[3]

In the latter part of 2019, defendant met an individual named Tyrone Barnes. Barnes told defendant he worked as a private investigator and was hired by defendant's former counsel to investigate defendant's PCR. Barnes informed defendant that he had interviewed C.W. sometime in either 2011 or 2012, and that during this interview C.W. recanted her statement that defendant had sexually assaulted her.

---

[3] See In re Saluti, 229 N.J. 114, 114 (2017).

Subsequently, in September 2020, defendant filed a pro se PCR petition citing newly discovered evidence. In March of 2023, defendant was appointed counsel who submitted a brief and appendix in support of defendant's PCR. Included in the appendix were certifications from defendant and Barnes. In his certification, defendant alleged ineffective assistance of counsel ("IAC") from both trial counsel and private counsel he had hired for his PCR. As to trial counsel, defendant alleged he was ineffective for failing to investigate, and stated he took the plea because he felt it was "obvious that nothing else was going to be done on my behalf and all I could do was accept the plea."

Barnes' certification stated that he "vividly remember[ed] speaking with [C.W.]," and that C.W., who he estimated to be around thirty years old at the time, "recanted her statement, felt guilty for making a false statement, and was very remorseful." Barnes averred that C.W. told him "[defendant] did not rape or sexually assault her," and that "police officers pressured her to make a statement against [defendant]." Barnes said the notes of his investigation were turned over to the private counsel; a copy of the notes Barnes purported to have taken were included in his certification.[4]

---

[4] The notes submitted by Barnes are mostly illegible.

A-2990-23

In May 2023, the State filed an opposition to defendant's PCR petition; defendant filed a supplemental brief in July 2023, which included certifications from three of his siblings. Each siblings' certification stated they were at the home at the time of the offense, and that until now they had never been contacted by anyone regarding defendant's charges. Defendant's brother, Andre Armand ("Andre"),[5] submitted a certification that he knew "the charges against my brother are not true," because a now deceased "former friend of [C.W.] . . . told me about the charges and gave me the information [C.W.] said that her grandmother or her guardian made her make a complaint against [defendant]." Further, Andre stated that C.W. was his "ex-girlfriend from three or four years ago" and that he is "still friends with [C.W.] but only through Facebook." Defendant's other brother stated he "was a high school student at the time of the incident and [did not] really remember what the charges were against [defendant]." Defendant's sister stated, "[defendant] and I have never discussed anything about the charges."

---

[5] Because defendant's family members share a common surname, we refer to them by their first names. No disrespect is intended.

A-2990-23

In August 2023, oral argument was held on defendant's PCR. In December 2023, PCR counsel notified the court that C.W. did not wish to provide a statement or have any further involvement in the matter.

On April 9, 2024, in a cogent written decision, Judge Critchley denied defendant's petition. The court found his PCR was time-barred because the petition was filed seventeen years after sentencing, and there were "no exceptional circumstances that warrant relaxation of the time bar."

The court also considered defendant's claims for IAC, and whether an evidentiary hearing was warranted, rejecting both. Judge Critchley determined trial counsel was not ineffective, nor was defendant prejudiced by counsel's actions, calling attention to defendant's statement at sentencing where he admitted he did commit the offense and that he was being truthful, even though he had denied as much in his presentencing report ("PSR").

Moreover, the PCR court determined that the information contained in his siblings' certifications was not "favorable or exculpatory." Specifically, that Andre's certification was unreliable as it comprised of "multiple layers of hearsay." The PCR Court further found it was unlikely defense counsel would have ever been able to interview C.W. because she was "under the umbrella and control of the State" at that time, and there was "little to no chance that [C.W.]

would have agreed to speak with [defendant's] trial counsel or an investigator hired before the plea."

Judge Critchley also determined that Barnes' memory and his notes from his interview with C.W. were not sufficient to constitute newly discovered evidence. Finding that the notes and their contents were hearsay, the court determined they would not likely have been admitted at trial because of the "unreliable nature of the information." The court also pointed out that C.W. had advised defendant's counsel that she would not participate any further in the matter, but if she had provided testimony recanting her statements, that would have constituted "new evidence that the [c]ourt would almost certainly have to act upon."

Lastly, the PCR court determined that defendant failed to establish a prima facie case for PCR warranting an evidentiary hearing because defendant failed to establish a claim for IAC.

Defendant now appeals, raising the following points:

> POINT I: THE PCR COURT ERRED IN PROCEDURALLY BARRING DEFENDANT FROM SEEKING [PCR].
>
> POINT II: BECAUSE [DEFENDANT] RECEIVED [IAC], THE PCR COURT ERRED IN DENYING [DEFENDANT'S] PETITION FOR PCR.

POINT III: IN THE ALTERNATIVE, BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, THE PCR COURT ERRED IN DENYING AN EVIDENTIARY HEARING.

## II.

"'[PCR] is New Jersey's analogue to the federal writ of habeas corpus.'" State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). PCR provides "a built-in 'safeguard that ensures that a defendant was not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)). The standard of review depends on the errors alleged. A PCR court's interpretation of the law is reviewed de novo. Id. at 540-41. See State v. Pierre, 223 N.J. 560, 576 (2015).

First PCR petitions are governed by Rule 3:22-12(a)(1), which states:

> [N]o petition shall be filed pursuant to this rule more than 5 years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction that is being challenged unless:
>
> (A) it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice; or
>
> (B) it alleges a claim for relief as set forth in paragraph (a)(2)(A) or paragraph (a)(2)(B) of this rule and is filed within the one-year period set forth in paragraph (a)(2) of this rule.

R. 3:22-12(a)(2)(B) allows a PCR petition to be filed no more than one year after "the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence."  See State v. Brewster, 429 N.J. Super. 387, 398 n.3 (App. Div. 2013) (quoting R. 3:22-12(a)(2)(B)).

"A court may relax the time bar if the defendant alleges facts demonstrating that the delay was due to the defendant's excusable neglect or if the 'interests of justice' demand it." State v. Goodwin, 173 N.J. 583, 594 (2002) (quoting State v. Mitchell, 126 N.J. 565, 576 (1992)).  A court should do so only "under exceptional circumstances." State v. Afanador, 151 N.J. 41, 52 (1997). "The concept of excusable neglect encompasses more than simply providing a plausible explanation for a failure to file a timely PCR petition." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009).  Therefore, "[t]o determine whether a defendant has asserted a sufficient basis for relaxing the [Rule 3:22-12's] time restraints, [the court] 'should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an "injustice" sufficient to relax the time limits." Ibid. (quoting Afanador, 151 N.J. at 52).

These time-bar limitations are important because they "encourage[] those believing they have grounds for [PCR] to bring their claims swiftly and discourage[] them from sitting on their rights until it is too late for a court to render justice." McQuaid, 147 N.J. at 485 (quoting Mitchell, 126 N.J. at 575-76). If the PCR petition was filed more than five years after the entry of the judgment of conviction, the PCR judge must exercise their "independent, non-delegable duty to question the timeliness of the petition," and require the defendant to "submit competent evidence to satisfy the standards for relaxing the rule's time restrictions . . . ." State v. Brown, 455 N.J. Super. 460, 470 (App. Div. 2018). Without doing so "the court does not have the authority to review the merits of the claim." Ibid.

Here, defendant's PCR was time-barred. Defendant cannot show excusable neglect. Defendant asserts that excusable neglect has been shown because defendant did not become aware of Barnes' contemporaneous notes until after his current PCR counsel was assigned. However, this fact is not an exceptional circumstance constituting excusable neglect. Prior to hiring private counsel in 2009—notably outside of the five-year window—defendant never attempted to pursue PCR. When asked at the PCR hearing why defendant did not file for PCR within the five-year window, counsel argued that defendant, a

layperson, did not have a true understanding of the PCR application process. Even so, assertions that a defendant is ignorant of the law, see State v. Murray, 162 N.J. 240, 246 (2000), or that they "decide[ed] to remain intentionally ignorant of the legal consequences of [their] decision," Brown, 455 N.J. at 471, does not constitute excusable neglect under R. 3:22-12(a).

Further, defendant does not meet the interest of justice standard to justify relaxation of the time bar. This PCR was filed seventeen years after sentencing, far outside the statutory window. As noted by the PCR court, much of the trial record is lost due to the age of this case. As our Supreme Court has stated, "'[a]chieving "justice" years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable . . . .'" McQuaid, 147 N.J. at 485 (1997) (quoting Mitchell, 126 N.J. at 575). Defendant also cannot "submit competent evidence to satisfy the standard for relaxing the rule's time restriction . . . ." Brown, 455 N.J. Super. at 470. C.W. has made it known she will not participate in this matter, the information contained in Barnes' notes is unreliable, and the siblings' certifications do not contain any exculpatory information.

Defendant also argues pursuant to Rule 33:22-12(a)(B)(2), his PCR should not be time-barred because of the factual predication that his current PCR counsel did not discover Barnes' notes prior to filing his petition. This argument lacks merit. The information contained in the notes was discoverable prior to the filing of this PCR in 2020. Defendant hired private counsel in 2009, and Barnes' certification states he interviewed C.W. in 2011, or 2012, more than nine years after his sentence and eight years before defendant filed his PCR in 2020.

Furthermore, Barnes' notes are undated, and state C.W. was thirty years old at the time, which is not possible given she was twelve years old at the time of the offense in 2001. The notes also have the date of the offense as December 1999, but the date of the offense was November 30, 2001.

Although defendant's petition is time barred, we address the merits of defendant's claims for completeness.

## III.

When a PCR Court does not hold an evidentiary hearing, the appellate court conducts a review de novo. State v. Harris, 181 N.J. 391, 421 (2004). A defendant is entitled to an evidentiary hearing only if they present a prima facie case supporting PCR, the court determines there are material issues of fact that cannot be resolved based on the existing record, and the court finds an

13

evidentiary hearing is required to resolve the claims presented.  R. 3:22-10(b); see also State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).  On appeal, the court analyzes a PCR judge's decision to deny a hearing on an abuse of discretion standard.  Brewster, 429 N.J. Super. at 401.

IAC claims must satisfy the two-prong test set forth in Strickland v. Washington[6] and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 57-58 (1987).  The two-part Strickland test requires a petitioner show (1) the particular way counsel's performance was deficient, and (2) that the deficiency prejudiced their right to a fair trial.  Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 57-58.  A failure to satisfy either prong of the Strickland standard requires the denial of PCR founded on an IAC claim.  466 U.S. at 700. "With respect to both prongs of the Strickland test, a defendant asserting [IAC] on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence."  State v. Gaitan, 209 N.J. 339, 350 (2012) (citations omitted).

Here, defendant asserts he has proved his claim for IAC.  We disagree. Under the first Strickland prong, defendant alleges trial counsel was deficient for failing to investigate.  However, there are virtually no records in existence with the exception of the PSR, and the sentencing hearing transcript.  As a result,

---

[6]  466 U.S. 668 (1984).

defendant cannot show by a preponderance of the evidence that trial counsel did in fact fail to interview C.W., or that trial counsel could have interviewed C.W. given she was under the umbrella of the State at that time. It is mere speculation.

Under the second Strickland prong, defendant cannot show he was prejudiced. Where a defendant claims plea counsel was ineffective, "the focus of the prejudice prong is 'whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" State v. Hooper, 459 N.J. Super. 157, 176 (App. Div. 2019) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). To sustain that burden, a defendant must demonstrate "'that a decision to reject the plea bargain would have been rational under the circumstances.'" Ibid. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). Here, defendant was facing five separate counts carrying a possibility of five to ten years of imprisonment. Defense counsel was able to obtain a favorable plea agreement where defendant pled guilty to only one count, the third-degree child endangerment charge, and was sentenced to time served, three years' probation and was subject to the requirements of Megan's Law. Although defendant denied touching C.W. in his PSR, at the plea and sentencing he admitted to touching C.W. on the buttocks and affirmed to the sentencing judge he was being truthful. As such, it cannot be shown that it would have been rational to reject

the plea under the circumstances. The PCR Court did not abuse its discretion in denying an evidentiary hearing. Defendant failed to establish a claim for IAC. As such, he fails to make a prima facie case for PCR.

Lastly, defendant's argument that Barnes' notes constitute newly discovered evidence lacks merit. "A PCR application based on newly discovered evidence is subject to the same analysis as a motion for new trial based on the same." State v. Szemple, 247 N.J. 82, 106 (2021) (quotation and alteration omitted). To obtain a new trial based upon such a claim, a criminal defendant must establish the evidence is: "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314 (1981) (citing State v. Artis, 36 N.J. 538, 541 (1962)).

All three prongs must be satisfied before a defendant is entitled to a new trial. State v. Ways, 180 N.J. 171, 187 (2004). Under the first prong, "'[d]etermining whether evidence is "merely cumulative, or impeaching, or contradictory,"' necessarily implicates prong three, 'whether the evidence is "of the sort that would probably change the jury's verdict if a new trial were granted."'" Nash, 212 N.J. at 549 (alterations in original) (quoting Ways, 180

N.J. at 188-89).  Under that rubric, "evidence that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory."  Ibid. (quoting Ways, 180 N.J. at 189).  In this respect, the first and third prongs of the Carter test "are inextricably intertwined."  Ibid.; see also State v. Behn, 375 N.J. Super. 409, 432 (App. Div. 2005) (recognizing the "analysis of newly discovered evidence essentially merges the first and third prongs of the Carter test").

A "reviewing court must engage in a thorough, fact-sensitive analysis to determine whether the newly discovered evidence would probably make a difference to the jury."  Ways, 180 N.J. at 191.  This requires assessing such evidence in the context of the "'corroborative proofs' in th[e] record."  Szemple, 247 N.J. at 110 (quoting State v. Herrerra, 211 N.J. 308, 343 (2012)).

"Newly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial."  Ways, 180 N.J. at 187-88.  "Courts generally regard recantation testimony as suspect and untrustworthy."  State v. Carter, 69 N.J. 420, 427 (1976), accord State v. Hogan, 144 N.J. 216, 239 (1996).  "Consequently, the burden of proof rests on those presenting such testimony to

17

establish that it is probably true . . . ." Carter, 69 N.J. at 427 (citing State v. Baldwin, 47 N.J. 379, 400 (1966)).

Carter's second prong "recognizes that judgments must be accorded a degree of finality and, therefore, requires that the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence." Ways, 180 N.J. at 192 (citing Carter, 85 N.J. at 314).

Our scope of review of a determination of a motion for a new trial is limited. Such a determination is committed to the "'sound discretion of the trial judge'" and "'will not be interfered with on appeal unless a clear abuse has been shown.'" State v. Armour, 446 N.J. Super. 295, 306 (App. Div. 2016) (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)). The burden remains on the defendant to satisfy each prong of the standard. State v. Fortin, 464 N.J. Super. 193, 216 (App. Div. 2020).

Here, the PCR court did not abuse its discretion in finding the proffered evidence was insufficient to warrant a new trial. First, this evidence fails prongs one and three because Barnes' notes would not likely have the effect of raising a reasonable doubt as to this defendant's guilt. Thus, that evidence would not "alter the outcome of the verdict." Ways, 180 N.J. at 189.

A-2990-23

As noted by the PCR court, these notes are unreliable for several reasons: they are undated, contain the wrong month and year of the alleged crime, and state that C.W. was around thirty years of age at the time of the interview, which would mean the interview had to take place in 2019, two years after private counsel was disbarred. Further, Barnes' certification and affidavit state that C.W. accused defendant because she felt pressured by the police, however, Andre's certification states he was told by another individual that C.W.'s grandmother was the one who forced her to make the accusation. Andre's statement contains multiple layers of hearsay, including a statement from an unidentified, now deceased individual.

Additionally, the record is void of any "strong corroborative proofs" of this recantation evidence. C.W. refuses to participate in this matter, and outside of Barnes' notes, there is no affidavit or certification from C.W. to corroborate the information contained in the notes.

This evidence also fails the second <u>Carter</u> prong. Defendant has not presented any newly discovered evidence that could not have been discovered with reasonable diligence at the time of trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2990-23