**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2799-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL G. GRIMES,

    Defendant-Appellant.

_____

Submitted June 4, 2025 – Decided July 24, 2025

Before Judges Currier and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 12-02-0285.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Dianne Glenn, Designated Counsel, on the briefs).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Elizabeth K. Gibbons, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Michael Grimes appeals from the April 18, 2024 order dismissing as procedurally time-barred his request for post-conviction relief (PCR) and an evidentiary hearing. Following our review of the record and the applicable legal principles, we affirm.

I.

On October 20, 2011, defendant drove a stolen vehicle from New York to Perth Amboy. There, he entered a convenience store and pointed a handgun at an employee and struck another employee in the face. He demanded money and ultimately received $220 and then fled. Later that day, defendant was shot while committing a subsequent robbery at a diner in New York. He was arrested that same day in New York and taken to a hospital. When questioned by New Jersey police while in the hospital, defendant confessed to the convenience store robbery in Perth Amboy.

In February 2012, defendant was indicted and charged as follows: third-degree theft, bringing a stolen automobile into the State, N.J.S.A. 2C:20-7; second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); third-degree receiving stolen property, N.J.S.A. 2C:20-7; second-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(d); and first-degree armed

2

robbery, N.J.S.A. 2C:15-1(a). New York authorities also charged defendant with five other crimes that he had committed in that state.

Because defendant was jailed in New York at the time, in February 2012, New Jersey issued an arrest warrant/interstate detainer for him. Defendant remained in jail in New York until August 2012, when he was sentenced to fourteen years in prison. New York officials served defendant with a formal notice pursuant to the Interstate Agreement on Detainers advising him of the pending New Jersey charges on September 10, 2014.[1] Thereafter, defendant

---

[1] The notice stated:

> [Y]ou have the right to request the appropriate prosecuting officer of the jurisdiction in which any such indictment . . . is pending, and the appropriate court that a final disposition be made thereof. You shall then be brought to trial within 180 days, unless extended pursuant to provisions of the Agreement, after you have caused to be delivered to said prosecuting officer and said court written notice of the place of your imprisonment and your said request, together with a certificate of the custodial authority as more fully set forth in said Agreement. However, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
>
> . . . .
>
> Should you desire such a request for final disposition of any untried indictment, . . . you are to

A-2799-23

requested a final disposition of his pending New Jersey charges and the State received the notice on September 17, 2014. Defendant was subsequently brought to Middlesex County on October 29, 2014, and assigned counsel. Defendant was arraigned on November 17, 2014.

On January 13, 2015—within 180 days of the State receiving defendant's request for final disposition—defendant pled guilty to second-degree possession of a weapon and two counts of first-degree robbery. The State recommended eight years in prison subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. In February 2015, the court sentenced defendant to his negotiated sentence of eight years in prison subject to an eighty-five percent parole disqualifier under NERA. Defendant was ordered to serve this sentence consecutive to his New York sentence.

Defendant appealed, challenging the imposition of the consecutive term sentence. In September 2015, a Sentencing Oral Argument panel affirmed the sentence.

In September 2022, defendant filed his first PCR petition. The court granted PCR counsel's request to dismiss the application without prejudice in

notify the Inmate Records Coordinator of the institution in which you are confined.

4

June 2023, and the petition was refiled in August 2023. In February 2024, PCR counsel filed a supplemental brief and certification in support of defendant's petition.

Defendant certifies he had a video conference with the Middlesex County Prosecutor's Office on or about April 15, 2013, in which he requested a speedy trial, while incarcerated in New York. Defendant claims he also sent letters to the Middlesex County Clerk's Office and Prosecutor's Office seeking to resolve the charges. Once he was appointed New Jersey counsel in October 2014, he states he communicated that he wanted a speedy trial. He advised counsel about the alleged video conference with the prosecutor.

Defendant further asserts he requested trial counsel to obtain a copy of the relevant pages from the logbooks at the New York correctional facility where he was housed to corroborate his claims about the video conference. Because his trial counsel did not retrieve the logbooks, defendant claims he could not file a motion to dismiss the indictment because there was no evidence he requested a speedy trial. He states: "Believing he had no other options[,] [he] negotiated a plea." Defendant claims that beginning in 2023, he made several freedom of information requests in New York to obtain the logbooks but was advised they were only kept for five years.

A-2799-23

In defendant's PCR petition, he argued: (1) ineffective assistance of counsel; (2) violation of due process rights to a speedy trial; (3) illegal sentence; and (4) excusable neglect for filing his petition outside the five-year time limit. He claims he was delayed in filing the PCR petition because of lack of access to New Jersey law books while imprisoned in New York and that the inmate paralegals were also unfamiliar with the procedures in New Jersey. He further maintains that the COVID-19 pandemic made it difficult to arrange for a notary, and there were other delays occasioned by the long quarantine periods.

In April 2024, the PCR court heard oral argument. It determined defendant had failed to establish excusable neglect and failed to provide any support for his assertion that his speedy trial rights were denied, or that he had requested his trial counsel and appellate counsel to pursue those claims. On April 18, 2024, the PCR court issued a written decision and an accompanying order denying defendant's request for PCR and an evidentiary hearing.

II.

Defendant raises the following points on appeal:

POINT ONE

THE PCR JUDGE ERRED IN ITS DETERMINATION THAT [DEFENDANT'S] LACK OF LEGAL ACCESS AND ASSISTANCE ALONG WITH THE RESTRICTIONS OF COVID-19 DID NOT RISE TO

6

THE LEVEL OF EXCUSABLE NEGLECT OR EXCEPTIONAL CIRCUMSTANCE TO RELAX THE FIVE-YEAR TIME BAR.

POINT TWO

THE PCR JUDGE ERRED IN DENYING [DEFENDANT'S] PCR PETITION WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO DETERMINE THE MERITS OF HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

We review a PCR court's conclusions of law de novo. State v. Nash, 212 N.J. 518, 540-41 (2013). We must affirm the PCR court's factual findings unless they are not supported by "sufficient credible evidence in the record." Id. at 540. A judge's decision to deny a PCR petition without an evidentiary hearing is reviewed under an abuse of discretion standard; however, we may review the factual inferences and legal conclusions drawn by the court de novo. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)).

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105

7

N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey). A defendant must establish both prongs by a preponderance of the evidence. State v. Gaitan, 209 N.J. 339, 350 (2012).

As to the first prong, the Constitution requires "reasonably effective assistance," so an attorney's performance may not be attacked unless they did not act "within the range of competence demanded of attorneys in criminal cases," and instead "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999) (citing State v. Davis, 116 N.J. 341, 357 (1989)). Thus, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Further, the court must not focus on the defendant's

dissatisfaction with "counsel's exercise of judgment during the trial . . . while ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006).

For the second prong of the Strickland test, "the defendant must show that the deficient performance prejudiced the defense" because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687, 694. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Marshall, 148 N.J. at 261 (quoting Strickland, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

To demonstrate "prejudice after having entered a guilty plea, a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial.'" Gaitan, 209 N.J. at 351 (alteration in original) (quoting State v. Nuñez-Valdéz,

200 N.J. 129, 139 (2009)).  A defendant must show that, "had he been properly advised, it would have been rational for him to decline the plea offer and insist on going to trial and, in fact, that he probably would have done so."  State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

A petitioner is not automatically entitled to an evidentiary hearing merely by filing for PCR.  State v. Porter, 216 N.J. 343, 355 (2013); State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).  Rule 3:22-10(b) provides that a defendant is entitled to an evidentiary hearing on a PCR petition only if:  (1) they establish "a prima facie case in support of [PCR]," (2) "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) "an evidentiary hearing is necessary to resolve the claims for relief."

In order to establish a prima facie case, a "defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits."  R. 3:22-10(b); see also Marshall, 148 N.J. at 158.  Thus, to obtain an evidentiary hearing on a PCR petition based upon claims of ineffective assistance of counsel, a defendant must make a showing of both deficient performance and actual prejudice.  State v. Preciose, 129 N.J. 451, 463-64 (1992).

A-2799-23

Conversely, Rule 3:22-10(e) states

> [a] court shall not grant an evidentiary hearing:
>
> > (1)   if an evidentiary hearing will not aid the court's analysis of the defendant's entitlement to [PCR];
> >
> > (2)   if the defendant's allegations are too vague, conclusory or speculative; or
> >
> > (3)   for the purpose of permitting a defendant to investigate whether additional claims for relief exist for which defendant has not demonstrated a reasonable likelihood of success as required by R[ule] 3:22-10(b).

Thus, "in order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." Cummings, 321 N.J. Super. at 170. "[R]ather, the defendant 'must allege facts sufficient to demonstrate counsel's alleged substandard performance.'" State v. Jones, 219 N.J. 298, 312 (2014) (quoting Porter, 216 N.J. at 355).

First PCR petitions are governed by Rule 3:22-12(a)(1), which states:

> [N]o petition shall be filed pursuant to this rule more than 5 years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction that is being challenged unless:
>
> (A) it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's

11

factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice; or

(B) it alleges a claim for relief as set forth in paragraph (a)(2)(A) or paragraph (a)(2)(B) of this rule and is filed within the one-year period set forth in paragraph (a)(2) of this rule.

"[A] court may relax the time bar if the defendant alleges facts demonstrating that the delay was due to the defendant's excusable neglect or if the 'interests of justice' demand it." State v. Goodwin, 173 N.J. 583, 594 (2002) (quoting State v. Mitchell, 126 N.J. 565, 576 (1992)). A court should do so only "under exceptional circumstances." State v. Afanador, 151 N.J. 41, 52 (1997). "The concept of excusable neglect encompasses more than simply providing a plausible explanation for a failure to file a timely PCR petition." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009). Therefore, "[t]o determine whether a defendant has asserted a sufficient basis for relaxing . . . [Rule 3:22-12's] time restraints, [the court] 'should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an "injustice" sufficient to relax the time limits.'" Ibid. (quoting Afanador, 151 N.J. at 52).

These time-bar limitations are important because they "encourage[] those believing they have grounds for [PCR] to bring their claims swiftly, and

12

discourage[] them from sitting on their rights until it is too late for a court to render justice." State v. McQuaid, 147 N.J. 464, 485 (1997) (quoting Mitchell, 126 N.J. at 575-76). If the PCR petition was filed more than five years after the entry of the judgment of conviction, the PCR judge must exercise their "independent, non-delegable duty to question the timeliness of the petition," and require the defendant to "submit competent evidence to satisfy the standards for relaxing the rule's time restrictions . . . ." State v. Brown, 455 N.J. Super. 460, 470 (App. Div. 2018). Without doing so, "the court does not have the authority to review the merits of the claim." Ibid.

A.

Defendant asserts his incarceration in New York "made it difficult, if not impossible, to have access to New Jersey court rules and case law to properly prepare his petition." Moreover, he asserts he had difficulty finding inmates who were familiar with New Jersey's PCR process to assist him in completing the court documents. He further contends the COVID-19 restrictions limited his access to the prison legal facilities and a notary.

The PCR court noted that defendant was sentenced in February 2015, and the judgment of conviction was amended for the final time on March 27, 2015.

Accordingly, he was required to file his PCR petition no later than March 20, 2020. "Instead, petitioner's PCR was not filed until September 11, 2022 . . . ."

Furthermore, the court opined, "even if the [c]ourt were to grant . . . [d]efendant any benefit from the COVID-19 pandemic" from the declaration of the states of emergency in New York and New Jersey, "that benefit would only be a reasonable tolling" on the day the states of emergency were lifted. The court observed that defendant did not file his petition until nearly fourteen months after New York lifted its state of emergency and six months after New Jersey ended its state of emergency.

The PCR court further stated it was "not persuaded by petitioner's argument that COVID-19 quarantine procedures precluded access to notary services and prison facilities." Moreover, it noted a petitioner must establish he was pursuing his rights diligently and that the pandemic specifically impacted his ability to file a motion. It observed, "petitioner has not established that he took any steps to diligently pursue his right to file a timely PCR. Further, . . . petitioner's argument regarding his [lack of] access to New Jersey caselaw while incarcerated in New York . . . does not constitute excusable neglect."

We note that defendant was advised at sentencing that he would have five years to file a PCR petition. Nevertheless, he did not file his first PCR petition

14

until nearly seven-and-a-half years after his March 2015 final judgment of conviction. Additionally, defendant's initial PCR petition did not have to include any legal argument. See R. 3:22-8 ("Argument, citations and discussion of authorities shall be omitted from the petition, but may be submitted in a separate memorandum of law."). Moreover, the COVID-19 state of emergency only started shortly before defendant's March 27, 2020 deadline to file his PCR. Defendant provides no explanation as to what actions, if any, he took during the nearly five years prior to the COVID-19 pandemic to pursue his PCR remedies. Moreover, he does not explain why he then delayed almost an additional two-and-a-half years before filing his initial PCR petition.

That defendant was not aware of the procedures or timeframe for filing a PCR petition because he purportedly did not have access to certain legal materials is insufficient to establish excusable neglect. Assertions that a defendant is ignorant of the law, see State v. Murray, 162 N.J. 240, 246 (2000), or that they "decide[ed] to remain intentionally ignorant of the legal consequences of [their] decision," Brown, 455 N.J. Super. at 471, does not constitute excusable neglect under Rule 3:22-12(a).

We conclude the PCR court did not err in finding defendant failed to demonstrate excusable neglect to justify the late filing, and we discern no reason

A-2799-23

to disturb its order. Although defendant's petition is time-barred, we briefly address the merits of defendant's claims for completeness.

B.

Defendant next argues his trial and appellate counsel were ineffective for failing to retrieve the logbooks from the New York prison where he was incarcerated to establish that he had a video conference with the New Jersey Prosecutor's Office in April 2013, during which he requested a speedy trial. He claims that he was prejudiced by the conduct of trial and appellate counsel, and the logbooks are now unavailable because they were only maintained for five years. He asserts the PCR court should have granted an evidentiary hearing to determine why trial and appellate counsel failed to retrieve the logbooks from New York.

The PCR court held that "[n]otwithstanding the PCR time bar, . . . petitioner fails to meet the requirements of ineffective assistance of counsel." The court noted, with respect to defendant's contention that his trial and appellate counsel failed to obtain records from New York that would have substantiated his claim that he had requested a speedy trial in April 2013, the court noted "petitioner has not provided any indicia to support this allegation." Moreover, it noted the plea offered to defendant was favorable, given the

maximum sentence he faced, and he has not demonstrated that he would not have pled guilty despite his attorneys not pursuing a motion for a speedy trial. It determined defendant did not show there was a reasonable probability that the outcome of the proceeding would have been any different.

The court proceeded to address the four-factor balancing test set forth in Barker v. Wingo, 407 U.S. 514, 527 (1972), as adopted in State v. Szima, 70 N.J. 196, 200-01 (1976).[2] The court concluded, "[a]fter a balancing of all factors pursuant to Barker, this [c]ourt finds that petitioner's counsel's performance was not deficient by not filing a motion for a speedy trial as it would have likely been denied."

There is no suggestion that the State deliberately delayed the trial to impede the defense, and defendant did not experience pretrial incarceration because he was already serving a sentence for the separate charges in New York. Moreover, defendant never asserted his innocence, he acknowledged at the plea hearing that he was satisfied with his attorney's advice, and there is no indication

---

[2] The Barker four-factor test must be applied to determine when a violation of a defendant's right to a speedy trial contravenes due process. The Barker test focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice to the defendant. 407 U.S. at 530-31.

A-2799-23

that he would not have pled guilty but for his attorney's performance regarding the speedy trial issue. We conclude the court did not err in determining defendant would not likely have been successful in advancing a motion for a speedy trial under the circumstances and find no reason to disturb the PCR court's holding.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2799-23